# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICHARD E. BIVENS,**

    **Plaintiff,**

    v.                                                             Case No. 20-CV-1548

**TARGET CORPORATION,**

    **Defendant.**

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Richard E. Bivens, an African American man, sues Target Corporation ("Target"), his former employer, for race discrimination and retaliation in violation of 42 U.S.C. § 1981. (Compl., Docket # 1.) Target has moved for summary judgment dismissing Bivens' complaint on the merits. (Docket # 19.) Alternatively, Target asks that Bivens' complaint be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). (Docket # 20 at 1–4.) For the reasons explained below, I will not dismiss Bivens' complaint for failure to prosecute; however, Target's motion for summary judgment on the merits is granted.

**Target's Motion to Dismiss for Failure to Prosecute**

Although not brought as an independent motion, Target alternatively moves within its summary judgment pleadings to dismiss Bivens' complaint pursuant to Rule 41(b) for failure to prosecute. In support, Target asserts that pursuant to the January 19, 2021 scheduling order, discovery was to be completed in this case no later than October 1, 2021. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 3, Docket # 23 and Pl.'s Resp. to DPFOF ("Pl.'s Resp.") ¶ 3, Docket # 28.) Bivens served his first and only discovery requests on June 4, 2021,

(*id.* ¶ 4), to which Target served its responses on July 26, 2021 (*id.* ¶ 5). On July 30, 2021, Target served Bivens discovery requests and noticed Bivens' deposition for September 22, 2021. (*Id.* ¶ 6.) Bivens' discovery responses were due on August 29, 2021; however, Bivens failed to timely respond. (*Id.* ¶ 7.) Despite following up multiple times, Target received no response. (*Id.* ¶¶ 7–11.) Target did not hear from Bivens again until January 27, 2022, almost three months after the discovery deadline passed, seeking to discuss potential resolution of the case. (*Id.* ¶ 13.)

Rule 41(b) provides that if a plaintiff fails to prosecute or to comply with the federal rules or a court order, a defendant may move to dismiss the action or any claim against it. Furthermore, district courts have inherent authority to dismiss a case *sua sponte* for a plaintiff's failure to prosecute. *Daniels v. Brennan*, 887 F.2d 783, 785 (7th Cir. 1989). The Seventh Circuit has counseled, however, that a case should not be dismissed for failure to prosecute without first giving "due warning" to the plaintiff's counsel. *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993). While "due warning" need not "be repeated warnings" or a formal order to show cause, there "should be an explicit warning in every case." *Id.*

Bivens does not dispute any of Target's assertions. Instead, Bivens responds that the proposed facts regarding discovery are "irrelevant" because Target "has filed a motion for summary judgment, not to compel discovery." (Docket # 28 at 1–13.) While this certainly does not excuse plaintiff's counsel's discovery conduct in this case, it is unclear why Target did not address this issue with the Court sooner. It appears from the record that Target *never* received its discovery responses, nor was it *ever* able to depose Bivens. This is extremely problematic and should have been brought to the Court's attention prior to the summary

judgment filings, either in a motion to compel or in a motion to dismiss for failure to prosecute.

Given that this is the first the Court has heard of Bivens' discovery delays, and because Bivens has not received "due warning" that his case would be dismissed for failure to prosecute, I decline to dismiss Bivens' complaint on this basis.

**Target's Motion for Summary Judgment**

Target also moves for summary judgment on the merits. For the reasons explained below, Target's motion for summary judgment on the merits is granted.

### FACTS

Bivens began his employment as a Warehouse Worker at Target's Distribution Center in Oconomowoc, Wisconsin on September 17, 2001. (DPFOF ¶ 14 and Pl.'s Resp. ¶ 14.) As a Warehouse Worker, Bivens was primarily responsible for the following tasks: efficiently and safely handling cartons to ensure productive and accurate processing of merchandise; unloading cartons or pallets of cartons from inbound trailers; and sorting products for distribution to the proper destination (often referred to as "receiving"). (*Id.* ¶ 15.) As a Warehouse Worker, Bivens was tasked with first processing and receiving freight, followed by managing and moving inventory to the appropriate area in the Distribution Center. (*Id.* ¶ 16.) As part of this process, Warehouse Workers are instructed to enter the total number of products received into a handheld device, which then designates the freight to the appropriate area in the Distribution Center. (*Id.*) The handling team member then prints a label for the item indicating where the freight should be sent and places it on the item. (*Id.*) Once the receiving flow labels are prepared, employees remove each item on the pallet and put them

on a rotating conveyor track that is either sent to a truck to deliver to one of Target's stores or circulated back into storage at the Distribution Center. (*Id.*)

Warehouse Workers can override the handheld device's designation for the freight, which then creates an "unreceived" designation, allowing the employee to get credit for processing the freights, i.e., printing labels and removing items from the pallet to the designated location, without actually processing them. (*Id.* ¶ 17.) The ability to override the designation and "unreceive" flow is allowed only if the employee started the receiving process for a particular pallet but was unable to complete the receiving process due to the end of their shift or if they did not receive all the products they needed in bulk for certain locations. (*Id.* ¶ 18.) In that circumstance, the employee would "unreceive" the freight and another shift would be tasked with completing the process. (*Id.*) Target contends that in addition to the permitted reasons to "unreceive" freight, some employees attempt to improve their productivity metrics by "unreceiving" freight without actually doing the work in processing it. (DPFOF ¶ 19.) In 2015, Target terminated two white employees upon discovering that they were "unreceiving" flow in an attempt to increase their productivity numbers. (*Id.* ¶ 20.)

In May and June 2017, Target's headquarters conducted an investigation to determine whether freight had been improperly and/or fraudulently unreceived. (Compl. ¶ 61 and Answer to Compl. ¶ 61, Docket # 4.) The investigation consisted of a blind audit process where the auditor was not provided with employee names; instead, the auditor could only view numbers assigned to each employee. (DPFOF ¶ 22 and Pl.'s Resp. ¶ 22.) The results of the investigation confirmed only one employee unloaded his freight and falsely unreceived freight for six different pallets on May 31, 2017. (*Id.* ¶ 23.) The employee ID number associated with this conduct belonged to Bivens. (*Id.* ¶ 24.) Further, the investigation team

reviewed the Distribution Center's video footage from May 31, 2017 and visually observed Bivens throwing flow labels in the trash. (*Id.*) Bivens was terminated from his employment on June 13, 2017. (Compl. ¶ 74 and Answer to Compl. ¶ 74.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d

410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

### 1. Legal Standards Under § 1981

Bivens alleges that Target discriminated and retaliated against him in violation of 42 U.S.C. § 1981. Section 1981 "protects the right of all persons 'to make and enforce contracts' regardless of race," *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981(a)). Section 1981 also encompasses claims of retaliation. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The same requirements for proving discrimination apply to claims under Title VII and § 1981. *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010).[1]

To defeat summary judgment on his discrimination claim, Bivens needs to submit evidence from which a reasonable juror could conclude that Target fired him because of his race. *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). The evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* While *Ortiz* disposes of the distinction between "direct" and "indirect" evidence, it does not affect the *McDonnell Douglas* burden shifting framework. *Id.* at 766; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, Bivens has the initial burden of establishing that (1) he is a member of a protected class; (2) he performed reasonably on the job in accord with his

---

[1] Bivens argues that Target's motion addresses Title VII, not § 1981, and as such, Target's "failure to address the proper legal theory" warrants denial of its motion. (Docket # 27 at 1–2.) Given the same requirements apply for proving discrimination under both statutes, this is not a proper basis on which to deny Target's motion.

6

employer's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by the employer. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If Bivens satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Bivens to submit evidence that the employer's explanation is pretextual. *Id.*

To survive summary judgment on his retaliation claim, Bivens "must show evidence of '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). Ultimately, the inquiry is whether the record contains sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive was the but-for cause of the materially adverse action. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

    2.    Application To This Case

        2.1    Discrimination Claim

Bivens alleges that Target terminated his employment because of his race. Target contends that Bivens' complaint should be dismissed because he has failed to adduce any evidence to support his claims of race discrimination.

As an initial matter, Target argues that because Bivens conducted very little discovery and because Bivens has the ultimate burden of proof on his § 1981 claim, Bivens has no admissible evidence on which he can rely to defeat summary judgment. In his response to Target's motion, Bivens argues that he has provided a sworn statement in which he "adopted"

7

Case 2:20-cv-01548-NJ   Filed 10/03/22   Page 7 of 14   Document 34

all of the facts contained in the complaint and asserts that these facts establish his case for race discrimination under § 1981. (Pl.'s Br. at 1, Docket # 27.)

It is well-settled law in this circuit that "a non-moving party may not rely solely on the allegations in his complaint to defeat summary judgment." *Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 478 (7th Cir. 1999). Bivens cannot bypass this rule by simply swearing to the accuracy of all of the facts in the complaint. "[V]erifying a complaint converts its factual assertions into an affidavit to the extent that those assertions comply with the requirements for affidavits, such as whether the affiant has personal knowledge of the assertions." *Johnson v. City of Kankakee*, 260 F. App'x 922, 924 (7th Cir. 2008). But Bivens points to no factual assertions in his complaint, within his personal knowledge, sufficient to create genuine issues of material fact on his race discrimination and retaliation claims. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996).

Perhaps realizing his evidentiary deficit, Bivens attacks the admissibility of Target's submitted evidence, arguing that although Target "attempts to introduce evidence in exhibits, the supporting Abdi Declaration does not establish foundation, accuracy[,] or personal knowledge of the documents supposedly incorporated." (Docket # 27 at 2.) But the Abdi Declaration contains twenty-seven paragraphs and twenty-six exhibits. (Docket # 21.) Bivens does not argue with any specificity which evidence is allegedly deficient or whether that particular piece of evidence is pertinent to any of Bivens' claims. Furthermore, of Target's twenty-eight proposed findings of fact, Bivens does not dispute twenty-three of them. (Docket # 28.) Thus, it is unnecessary to address the admissibility of Target's proffered evidence as Bivens does not dispute the majority of Target's stated material facts.

Target argues that Bivens cannot show elements two and four of his *prima facie* case for race discrimination—that he performed reasonably on the job in accordance with Target's legitimate expectations and that similarly situated employees outside of his protected class were treated more favorably by Target.

When considering whether an employee is meeting an employer's legitimate expectations, the court looks to whether he was performing adequately at the time of the adverse employment action. *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). "An employee who violates her employer's established policies fails to perform adequately or meet her employer's legitimate expectations." *E.E.O.C. v. Aurora Health Care Inc.*, 933 F. Supp. 2d 1079, 1104 (E.D. Wis. 2013) (citing *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676 (7th Cir. 2006)). Bivens does not dispute that as a warehouse worker, he was required to enter the total number of products received into a handheld device, which then designates the freight to the appropriate area in the Distribution Center. (DPFOF ¶ 16 and Pl.'s Resp. ¶ 16.) Nor does he dispute that while warehouse workers have the ability to override the handheld device's designation for the freight, which then creates an "unreceived" designation (*id.* ¶ 17), employees were only allowed to do so if they started the receiving process for a particular pallet but were unable to complete the process due to the end of their shift or if they did not receive all the products they needed in bulk for certain locations (*id.* ¶ 18).

Bivens does not dispute that Target conducted an investigation, consisting of a blind audit process in which the auditor could only view numbers assigned to each employee, to determine whether freight had been improperly and/or fraudulently received. (*Id.* ¶¶ 21–22.) Bivens does not dispute that the investigation confirmed that only one employee unloaded his freight and falsely "unreceived" freight for six different pallets on May 31, 2017 (*id.* ¶ 23) and

9

Case 2:20-cv-01548-NJ   Filed 10/03/22   Page 9 of 14   Document 34

that this employee's identification number belonged to Bivens (*id.* ¶ 24). Furthermore, Bivens does not dispute that the Distribution Center's video footage from May 31, 2017 showed Bivens throwing flow labels in the trash. (*Id.*)

In other words, Bivens does not dispute any of Target's proffered facts indicating that Bivens violated Target's established policy regarding "unreceiving" freight. For this reason alone, Target has shown that it is entitled to summary judgment in its favor as to Bivens' discrimination claim.

Even assuming, *arguendo*, Bivens could show that he was meeting his employer's legitimate expectations, Bivens has failed to show that similarly situated employees outside of his protected class were treated more favorably by Target. To qualify as similarly situated, a fellow employee must be "directly comparable to the plaintiff in all material respects." *Walker v. Bd. of Regents of the Univ. of Wis. Sys.*, 410 F.3d 387, 396 (7th Cir. 2005). Specifically, the plaintiff must be "similarly situated with respect to performance, qualifications, and conduct," and must show that the other employee "engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).

Target proffers that in 2015, consistent with its "unreceiving" policy, it terminated two white employees upon discovering that they were "unreceiving" flow in an attempt to increase their productivity numbers. (*Id.* ¶ 20.) Bivens does not dispute this fact; rather, he asserts that the fact is "irrelevant to this lawsuit and on its face does not apply to Plaintiff." (Pl.'s Resp. ¶ 21.) But this fact is extremely relevant to Bivens' lawsuit as it shows that Target, in fact, treated similarly situated employees outside of Bivens' protected class *the same* as it treated Bivens.

10

Case 2:20-cv-01548-NJ   Filed 10/03/22   Page 10 of 14   Document 34

In an apparent attempt to point to comparators, Bivens cites several emails between Target management during the "unreceiving" investigation in which Target articulated suspicion that employee Scott Fruncek improperly "unreceived" freight. (Declaration of Janet L. Heins ¶¶ 2–6, Exs. A–D, Docket # 30.) Bivens argues that "despite documenting potentially fraudulent activity" by Fruncek (a white man), Target "took no action against him." (Pl.'s Resp. ¶ 25.) But that is not what these emails state. While the emails indeed show that Target was investigating whether Fruncek engaged in such activity, it also shows that Target's investigation showed "no red flags" under Fruncek's name. (Docket # 30-3 at 2.) Instead, the investigation "showed the [sic] Richard Bivens had several examples from the day prior." (*Id.* at 1.) As such, Bivens has failed to show that Target treated similarly situated employees outside of his protected class more favorably. For these reasons, Bivens has failed to submit evidence from which a reasonable juror could conclude that Target fired him because of his race. Summary judgment is granted in Target's favor as to this claim.

2.2     Retaliation Claim

In his complaint, Bivens alleges that Target retaliated against him "for his protected complaints of race discrimination." (Compl. ¶ 84.) Again, Bivens "must show evidence of '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)).

Bivens generally alleges that he "regularly complained to his supervisors and to [Target's] Human Resources" about an allegedly racially hostile work environment and told a Senior Group Leader at Target about racism he experienced in the workplace. (Compl. ¶¶

26, 41.) While a complaint of discrimination based on a protected characteristic like race is protected activity, *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021), Bivens points to no evidence, beyond his mere speculation, that Target took a materially adverse action against him because of these complaints. In other words, Bivens offers no evidence on which a reasonable jury could connect his complaint of race discrimination to his termination.

Much of Bivens' allegations surround his relationship with his former supervisor at the Distribution Center, Justin Franze (referred to incorrectly in Bivens' complaint as "Justin Forenza"). Bivens alleges that Franze took him away from "good" extra jobs that were available to employees; treated him worse than non-African American employees; falsified his attendance records; and often reassigned him to work that made it difficult for him to make his quota, particularly on one instance that Target used to support his termination. (Compl. ¶¶ 36, 37, 44, 46.) But to the extent that Bivens' retaliation claim is based on his interactions with Franze, he also fails to provide evidence that he was terminated or subject to any other materially adverse action because of a discrimination complaint.

In sum, the record does not contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive on behalf of Target was the but-for cause of a materially adverse action against Bivens. For this reason, Target is also entitled to summary judgment on Bivens' retaliation claim.

    3.     *Motion to Seal*

Finally, Target has moved for leave to file documents under seal in support of its motion for summary judgment. (Docket # 17.) Target contends that exhibits filed in support of the summary judgment motion contain documents or potions thereof designated as confidential pursuant to an August 17, 2021 Protective Order entered by the Court. (*Id.* at 1.)

Target has also submitted a proposed order to seal its memorandum in support of summary judgment and all twenty-six of its exhibits. (Docket # 18.) Target's request is overbroad and fails to provide a sufficient factual basis for sealing any portion, let alone all, of its summary judgment materials. If Target seeks to seal portions of its summary judgment materials, it must specify which portions should be sealed along with a factual basis for doing so. *See* General L.R. 79(d).

## CONCLUSION

Bivens alleges that his former employer, Target, subjected him to discrimination and retaliation. The Seventh Circuit has stated that summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Bivens has failed to put forth evidence on which a rational trier of fact could find for him on his discrimination or retaliation claims. Thus, summary judgment is granted in favor of Target. Bivens' complaint is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's motion to restrict (Docket # 17) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of October, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge